### ACTION FOR SPECIFIC PERFORMANCE AGAINST PARENTS.

Circuit Court of Cuyahoga County.

ELIZABETH SCHROEDER AND FREDERICK SCHROEDER v. CHRISTIAN SCHULTZ AND JOHANNA SCHULTZ.*

Decided, June, 1901.

*Evidence—Specific Performance—Circumstances Surrounding Parties to be Considered.*

In an action brought against a parent upon an alleged promise to convey certain real estate to a child in consideration of the child's promise to live upon and improve the same, there being direct conflict in the evidence as to the making of the alleged promise, the facts and circumstances surrounding the parties, including the apparent scheme of the parent for parcelling his real estate among his various children, will be considered.

*H. T. Cowin* and *Alex. Hadden,* for plaintiffs.
*W. H. Polhamus* and *Jas. F. Wilson,* contra.

MARVIN, J.; CALDWELL, J., and HALE, J., concur.

This case comes into this court by appeal from the court of common pleas of this county.

The plaintiffs were married to each other on the 8th day of November, 1887.

---

*Affirmed without opinion, *Schultz* v. *Schroeder,* 68 Ohio State, 690.

The defendants are husband and wife, and are the parents of the plaintiff, Elizabeth Schroeder.

The plaintiffs, ever since the 11th of May, 1888, have lived in a house built on a tract of land consisting of twenty-five acres, situated in Warrensville township in this county, the title to which is in the defendants.

The plaintiffs seek for a decree that the defendants shall convey said tract of land to the plaintiff, Elizabeth Schroeder. The plaintiffs claim to be entitled to this conveyance because of a promise which they say the defendants made to them in 1887, shortly after their marriage; that such promise was made upon condition that the plaintiffs should construct a dwelling-house upon said premises and make the same their home; and that they have constructed such dwelling-house, and performed, on their part, every condition to be performed to entitle them to the conveyance under the promises of the defendants. The defendants deny that such promise was ever made.

No question is made here but that if the plaintiffs were promised by the defendants a conveyance of the land upon condition that they make improvements and expended money thereon, and that they were put into possession of the premises under such promise, and have made improvements and expenditures upon which the promise was conditioned, the defendants would be estopped from refusing to make good their part of the promise. So that there remains only the determination of the questions of fact made in the case.

The defendants deny that any promise was ever made by them to convey the premises to the said Elizabeth. They say that although a dwelling-house, a barn and other improvements have been made upon the premises by the plaintiffs, they were made under a contract, not in writing, by which the plaintiffs, whenever they should give up possession of the premises, should receive from the defendants the amount of money expended by them for such improvements. They say that in 1895 an agreement was made between the parties as to the amount thus expended; that the plaintiffs agreed to give up possession of the premises, but that they failed to do so; that the defendants notified the plaintiffs at that time that they were ready to pay the

money which had been expended by the plaintiffs in improvements upon the premises, and have ever since been, and are now, ready to pay such sum of money.

The evidence in the case consists chiefly in the testimony of witnesses, though certain exhibits have been introduced.

There is great conflict in the testimony of the witnesses. Some of them are clearly mistaken in their testimony, or fail to remember certain things that took place, or think they remember some things which never did take place.

The defendants are the parents of five children, two sons and three daughters, all of whom are married.

At the time when the plaintiffs claim the promise was made to them, the defendants were the joint owners of other lands, one tract of forty-six acres, and the tract of which the twenty-five acres was a part—said tract containing in all, fifty-nine and three-fourths acres. In 1898 the defendants conveyed to their youngest son a parcel of twenty-six acres out of said tract of forty-six acres and conveyed the remaining twenty acres of said tract to their daughter Emma, reserving in each deed a life estate to themselves. At about the same time they conveyed to their oldest son, John, all of the fifty-nine and three-fourths acre tract, except the twenty-five acre parcel which is claimed by the plaintiffs in this action. In the deed to John no reservation of a life estate to the grantors is made. Since the marriage of their youngest daughter, she being the one to whom no real estate has been conveyed, the defendants have given to her some $800 in money, and the defendant, Christian Schultz, has endorsed the bank paper of the husband of their said daughter, to the amount of something like $2,000, no part of which has he ever been called on to pay, nor, so far as any evidence in this case shows, is he likely ever to be called on to pay it.

The conflict in the testimony is such as to make it entirely irreconcilable.

It is a painful thing to suppose that any of the witnesses deliberately stated what was not true; but we are forced to determine as best we can, what are the *probable* facts in the case.

The testimony of each of the plaintiffs is positive that the promise was made to them as claimed in the petition. The testi-

mony of both of the defendants is equally positive that no such promise was made.  It is certain that under some arrangement between the parties, the plaintiffs entered into possession of the premises claimed, and expended upon them money; that they have remained in the occupation of the house ever since and, except to the extent that the defendants can claim that by reason of the fact that Christian Schultz manured about five acres of the land in the winter of 1894-95, the possession of the entire premises has been continuously in the plaintiffs from the month of May, 1888.  This manuring of the five acres is easily accounted for by the fact that there was undoubtedly, as shown by the testimony of all, a disagreement between the plaintiffs and the defendants in the fall of 1894 or the winter following, and the plaintiffs contemplated leaving the premises.

At that time a statement was made up by the plaintiff, Frederick Schroeder, and handed to the defendant, Christian Schultz. By this statement it was made to appear that if the plaintiffs gave up the property, there should be paid to them as reimbursement for their expenditures upon the premises, the sum of $342.87.

This statement, however, is erroneous to the extent of at least $60, because if the defendants were to take the property, the amount, last named, for which Schroeder in his statement gave credit to Schultz, should not have been so credited, on the theory that Schultz was to pay back to Schroeder all that Schroeder had expended; the $60 item is for expenditures made by Schultz upon the house, as shown by the statement, and, if Schultz was to resume possession and be the owner, that $60 was expended by him for the benefit of his own property.  The other items for which the said Schultz is given credit in the statement, are for personal chattels, and were properly credited.

Assuming that the statement rendered was correct in other respects, the balance really to be paid by Schultz to Schroeder would have been $402.87 instead of $342.87.  This same statement showed that Schroeder owed to Schultz $350, and this would be correct, except as to the $60 item, if Schroeder remained upon the premises, but would have been but $290 if he left the premises.

The true balance, however, would have been as already stated, $402.87, which Schultz should have paid Schroeder if he gave up the premises. That this whole plan was abandoned is evident from the fact that the plaintiffs have remained in possession of the premises ever since.

From the feeling which has manifestly existed between the parties during all that time we are led to the conclusion that the defendants felt that the plaintiffs had rights in the premises which they could not take from them or they would not have permitted them to remain unmolested for the last six years.

Several witnesses testify that the defendant, Christian Schultz, has stated to them that he had given this property to Elizabeth, at the same time stating that he had given that property which he has since deeded to his son John to him, and that which he has deeded to his daughter Emma to her, and that which he has since deeded to his son Herman to him.

One witness, Mrs. Bartlett, whose appearance is calculated to impress us that she is telling the truth, and who apparently has no interest in telling anything but the truth, says that Mrs. Schultz told her that Elizabeth was to have these twenty-five acres.

It is true that the several children of the defendants, other than Elizabeth, testify that nothing was said to them about these gifts, and that the first they knew that they were severally to receive the parcels of land which were deeded to them respectively, was when they received their deeds in 1898. Still the entire conduct of the parties goes to show that there must have been some understanding that they were to receive the parcels which have since been deeded to them.

Emma and her husband expended some $1,400 in building a house upon the premises, of which Emma now holds a deed, and which they have occupied for a good many years. John and Herman have each had possession and occupancy for a considerable number of years of the parcels to which they now hold title; and we think it clear that the general plan of these defendants was to divide up their real estate in the manner claimed by the plaintiffs, and that they must have made some promise to each of the children that such division would be made. That being so,

they would naturally have made the promise to Elizabeth which she claims. If they did, the conduct of Elizabeth and her husband in expending money in the erection of buildings, putting out fruit trees, and other improvements, is naturally accounted for, and it is not easily accounted for on any other theory.

In 1897, some four years after the plaintiff, Frederick Schroeder, rendered the statement to his father-in-law, he gave a note to his father-in-law for $350, due October 15, 1897, which note is still outstanding. On the last-named date the defendants executed a mortgage to their son Herman for $500 which still rests upon the premises, and the debt incurred by such mortgage is still unpaid.

The evidence shows that Christian Schultz expended some money in the construction of the house and other buildings erected upon this twenty-five acres; the exact amount we can not determine. At the time of these expenditures, the feeling between the parties was that which would naturally be expected between those sustaining the relation to each other which these plaintiffs and defendants do sustain, and, without doubt, work was done and money expended by Schultz of which no accurate account was kept.

We have reached the conclusion that the most equitable disposition of this case which we can make and conform to the facts as we understand them, is to require that the defendants shall convey to the plaintiff, Mrs. Elizabeth Schroeder, within ten days from the entering of the decree in this case, the twenty-five acres of land, subject to the mortgage of $500 held thereon by Herman Schultz, thus putting the payment of this mortgage debt, interest and all, upon the plaintiffs and cancelling the note of $350 held by Christian Schultz against the plaintiffs. And a decree will be entered accordingly.